UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JOYCE BEARDEN | * | CIVIL ACTION NO.  09-0636 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Joyce Bearden protectively filed the instant application for Title II Disability Insurance Benefits on January 5, 2007.  (Tr 81).  She alleged disability since November 20, 2005, because of congenital back problems, neck and right shoulder pain, headaches, depression, chronic fatigue, right knee problems, bilateral carpal tunnel syndrome, fibromyalgia, and left hip pain. (Tr. 74-75).  On June 7, 2007, the state agency granted her application, finding Bearden disabled as of December 1, 2006, but not before then.  (Tr. 33-34, 63-64).  Dissatisfied with the agency's finding that she was not disabled for the period from her alleged onset date of November 20, 2005, through November 30, 2006, Bearden requested and received a December 6, 2007, hearing before an Administrative Law Judge ("ALJ").  (Tr. 267-301).  However, in a May 16, 2008,

written decision, the ALJ determined that Bearden was not disabled prior to December 1, 2006, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work in retail sales and property management. (Tr. 19-32). Bearden sought review before the Appeals Council. On February 20, 2009, however, the Appeals Council denied Bearden's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On April 17, 2009, Bearden sought recourse before this court. She alleges the following errors:

(1) the ALJ failed to apply the Psychiatric Review Technique pursuant to 20 C.F.R. § 416.920a;

(2) the ALJ failed to find that plaintiff suffered from a severe impairment of depression; and

(3) the ALJ's residual functional capacity assessment is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a

preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite

>    duration will not be found disabled.
>
> (3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Bearden did not engage in substantial gainful activity during the relevant period. (Tr. 24). At Step Two, he found that Bearden suffers severe impairments of degenerative disc disease of the cervical spine and fibromyalgia. (Tr. 24). He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 30).

Plaintiff contends that the ALJ erred when he failed to find that her depression was a severe impairment. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). Furthermore, when evaluating the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e); 20 C.F.R. § 416.920a. The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 1520a(c), 920a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*. In the Fifth Circuit, however, an ALJ's failure to complete the psychiatric review technique is a procedural error that does not require remand, provided the error has not affected a party's substantial rights. *McGehee v. Chater*, 1996 WL 197435, *3 (5th Cir. Mar. 21, 1996) (unpubl.) (citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).

Here, the record evidence is not uniform. For example, on March 2, 2006, Bearden exhibited poor sleep and eating habits. (Tr. 209-210). She suffered from crying spells related to overwhelming feelings of her current life situations. *Id*. She was diagnosed with major depression disorder and assigned a Global Assessment of Functioning ("GAF") of 55. *Id*.[1]

---

[1] A GAF of 51-60 is defined as "**[M]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.

On March 16, 2006, Bearden was seen for a psychiatric evaluation. (Tr. 207-208). Her sleep and appetite were good. *Id*. She was diagnosed with depression, and assigned a GAF of 65. *Id*.[2]

By March 29, 2006, Bearden said that she was taking her medication, as prescribed. (Tr. 206). She had some depression, **but nothing that she could not handle**. *Id*. She said that the last four months had been good. *Id*. Her energy level was good and her activity level was okay. *Id*. She denied anxiety. *Id*.

On May 17, 2006, Bearden was taking her medication as prescribed. (Tr. 205). She had a little depression, but was not as depressed as she had been. *Id*. Her energy level was poor. *Id*. She denied anxiety, and appeared "baseline." *Id*.

On July 5, 2006, plaintiff was seen for a psychiatry evaluation. (Tr. 119-120). She complained of nervous breakdowns, depression, and life-long anxiety. *Id*. She reported decreased interest, increased sleep and weight gain. *Id*. Nonetheless, her insight and judgment remained fair. *Id*. Dr. Nazeer diagnosed depression NOS, anxiety NOS, and assigned a GAF of 60. *Id*.

On July 13, 2006, plaintiff reported some depression, but stated that she was getting better. (Tr. 204). She experienced anxiety from time to time. *Id*.

On August 2, 2006, plaintiff again saw Dr. Nazeer at the psychiatry clinic. (Tr. 126). Bearden felt that her mood had improved and that the medication was starting to work. *Id*. Her memory, attention, and concentration were unimpaired. *Id*. Nazeer diagnosed depression NOS

---

[2] A GAF of 61-70 indicates "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**." DSM-IV, pg. 32.

and to rule out mood disorder. *Id*. He assigned a GAF of 70. *Id*.

On August 10, 2006, plaintiff had some depression, but was taking her medication. (Tr. 204). She had no overt signs of psychosis. *Id*.

Dr. Nazeer's notes from September 13, 2006, indicate that Bearden's energy level had decreased; she was anxious, depressed, and preoccupied, but oriented to time and place. (Tr. 117). Her memory, attention, and concentration remained unimpaired. *Id*. Her judgment was grossly intact and her insight was adequate. *Id*. She reported her pain as an 8 out of 10, and had crying spells. *Id*. Nazeer diagnosed depression, NOS, and assigned a GAF of 60. *Id*.

It is clear from the foregoing medical records that Bearden's depression waxed and waned in intensity from moderate to mild during the relevant period. In *McGehee v. Chater*, the Fifth Circuit declined to remand the case to correct the ALJ's procedural failure to apply the psychiatric review technique where the record contained *some*, although by no means uniform, evidence to support the ALJ's determination that the claimant had no medically determinable medical impairment. *McGehee, supra*.[3]

This case is further complicated, however, by the state agency's determination that plaintiff's mental impairment eventually became disabling. Social Security Ruling 83-20 outlines the policy and procedure by which the Commissioner should determine the onset date of a disability. SSR 83-20 (1983). "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id*. With slowly progressive impairments such as depression, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Spellman v. Shalala*, 1

---

[3] In *McGehee* a consultative physician assigned her a GAF of 70, and stated that she would not have any trouble working. *Id*.

F.3d 357, 362 (5th Cir. 1997) (quoting, SSR 83-20). In such cases, "when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance of a medical advisor." *Spellman*, 1 F.3d at 362.

In this case, the agency psychologist, David Atkins, Ph.D., determined that Bearden was disabled following a March 29, 2007, mental status examination administered by E. H. Baker, Ph.D. (Tr. 221-222, (Tr. 223-226). In a subsequent exchange between Atkins and the disability examiner, Atkins suggested that the agency should derive an earliest onset date by "backing up three months" from the March 2007 consultative examination. (Tr. 255). Atkins further indicated that Bearden's prior application had been denied on June 27, 2006, and without new evidence, he did not see how they could go back that far.[4] In other words, Atkins likely appreciated that depression did not become disabling overnight, and thus he had to derive an onset date that was some time before the March 2007 consultative examination, but some time after the denial of the previous application. However, this reasoning was not explained in the decision, and thus, the disability onset date remains arbitrary. As this case is being remanded on other grounds, *see* discussion, *infra*, the ALJ should consult a medical expert to assess the severity of plaintiff's depression during the relevant period, and to determine plaintiff's disability

---

[4] Although not addressed by the ALJ or the parties, the record indicates that Bearden filed two prior applications which were initially denied on June 27 and August 16, 2006, but not further appealed. (Tr. 81-82). If so, those initial determinations would be binding for the period though the dates of those decisions, unless reopened by the ALJ. *See* 20 C.F.R. § 404.905 and *Gaines v. Sullivan*, 1993 WL 114503, *5-6 (E.D. La. Apr. 6, 1993). The ALJ may consider this issue upon remand.

onset date.[5]

## II. Residual Functional Capacity

The ALJ determined that Bearden retained the residual functional capacity for the full range of light work, during the relevant period. (Tr. 30).[6] Plaintiff emphasizes that because the ALJ characterized the findings of the state agency disability examiner as consistent with his residual functional capacity assessment, the ALJ also should have adopted the disability examiner's limitations on reaching, fingering, and postural abilities. *See* Tr. 31, 241-248. However, there is no indication that the disability examiner herein was an acceptable medical source or even a medical professional. 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3). Instead, the only medical evidence to potentially support the ALJ's physical residual functional capacity assessment is a May 24, 2007, consultative examination conducted by David Hebert, M.D. (Tr. 249-253). In fact, Hebert saw no reason why Bearden could not return to her past relevant work as a cashier or a stocker in a store. *Id*. However, Hebert examined Bearden some

---

[5] The disability onset date need not necessarily be December 2006 or earlier, the medical record ultimately may support a finding of disability at a later date, *see e.g.*, January 23, 2007. *See* Tr. 198-199.

[6] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

five to six months after the relevant period. Moreover, there is evidence that her physical condition gradually improved over time. *See* Tr. 133, 136-137.[7] Thus, her condition in May 2007 is not necessarily dispositive of the period at issue.

In the end, the ALJ appears to have autonomously derived plaintiff's residual functional capacity. (Tr. 30-31). However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence). Accordingly, upon remand, the ALJ should consult a medical expert to review the medical record and to assess plaintiff's residual functional capacity during the relevant period.

### III. Step Four and Remand

Because the foundation for the Commissioner's Step Four determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the

---

[7] Indeed, by April 2006, it appears that she was able to do some "heavy pulling on a tiller while working in the yard." *See* Tr. 128 (June 2006 emergency visit for lower back pain stemming from activity two months earlier).

10

relevant period, is likewise not supported by substantial evidence.

Plaintiff urges the court to enter a judgment awarding benefits for the relevant period. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  Plaintiff's residual functional capacity assessment remains indeterminate.

## Conclusion

Because the foundation for the Commissioner's Step Four determination was premised upon a residual functional capacity which is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff was not disabled during the relevant period, is also not supported by substantial evidence.

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of July 2010.

_____
Karen L. Hayes
United States Magistrate Judge